JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
James Leroy Mummert

**DEFENDANTS**
United States of America

**(b)** County of Residence of First Listed Plaintiff   Adams
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
James J. Waldenberger, Esquire
1525 Locust Street, 19th Floor
Philadelphia, PA 19102

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

❏ 1  U.S. Government
    Plaintiff

❏ 3  Federal Question
    *(U.S. Government Not a Party)*

☒ 2  U.S. Government
    Defendant

❏ 4  Diversity
    *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ❏ 1 | Incorporated or Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY -** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | Product Liability | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | ❏ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 340 Marine | ❏ 368 Asbestos Personal Injury Product Liability | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ❏ 835 Patent - Abbreviated New Drug Application | ❏ 460 Deportation |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | **LABOR** | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle Product Liability | ❏ 371 Truth in Lending | ❏ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| ❏ 190 Other Contract | ❏ 360 Other Personal Injury | ❏ 380 Other Personal Property Damage | ❏ 720 Labor/Management Relations | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| ❏ 195 Contract Product Liability | ☒ 362 Personal Injury - Medical Malpractice | ❏ 385 Property Damage Product Liability | ❏ 740 Railway Labor Act | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 196 Franchise | | | ❏ 751 Family and Medical Leave Act | ❏ 863 DIWC/DIWW (405(g)) | ❏ 890 Other Statutory Actions |
| | | | ❏ 790 Other Labor Litigation | ❏ 864 SSID Title XVI | ❏ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 791 Employee Retirement Income Security Act | ❏ 865 RSI (405(g)) | ❏ 893 Environmental Matters |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | | | ❏ 895 Freedom of Information Act |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ❏ 896 Arbitration |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 950 Constitutionality of State Statutes |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 448 Education | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration Actions | | |
| | | ❏ 550 Civil Rights | | | |
| | | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
  Proceeding

❏ 2 Removed from
  State Court

❏ 3 Remanded from
  Appellate Court

❏ 4 Reinstated or
  Reopened

❏ 5 Transferred from
  Another District
  *(specify)*

❏ 6 Multidistrict
  Litigation -
  Transfer

❏ 8 Multidistrict
  Litigation -
  Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1331
Brief description of cause:
55-year-old man was paralyzed after developing a spinal abscess from a pneumonia shot.

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ❏ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES LEROY MUMMERT, JR.<br>310 Labor Camp Road<br>Gardners, Pennsylvania 17324<br><br>v.<br><br>UNITED STATES OF AMERICA<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, District of Columbia 20530 | CIVIL ACTION NO. |

## COMPLAINT

Plaintiff, James Leroy Mummert, Jr., files this Complaint against Defendant United States of America.  In support thereof, Plaintiff alleges as follows:

### JURISDICTION AND VENUE

1.     This case sounding in medical malpractice involves a claim for personal injury brought against the United States of America under Section (b)(1) of the Federal Tort Claims Act ("FTCA"), 42 U.S.C. §1346.  Jurisdiction is based on 28 U.S.C. §1331 (federal question), 42 U.S.C. §1346, *et seq.*  (FTCA litigation) and 28 U.S.C. §1367 (supplemental jurisdiction).

2.     This matter is brought under the Federal Tort Claims Act.

3.     Venue is proper because the Plaintiff resides in this judicial district.

### THE PARTIES

4.     Plaintiff, James Leroy Mummert, Jr., is an individual and adult citizen of the Commonwealth of Pennsylvania residing therein at 310 Labor Camp Road, Gardners, Pennsylvania 17324.

5.     Defendant United States of America d/b/a Baltimore Veterans Administration Medical Center ("Baltimore VAMC") is a state-chartered hospital and health care facility.  See, e.g., 36 Pa. C.S.A. §3504.1.  The Baltimore VAMC maintains its principal place of business at 10 North Greene Street, Baltimore, Maryland 21201.  The Baltimore VAMC is a state agency within the meaning of 28 U.S.C. §2674.  The Baltimore VAMC includes Girish Sethuraman, M.D., Jena Lee, M.D., Kishan Kapadia, D.O., Payam Sajedi, M.D., Wei Zheng, M.D., Allan Krumholz, M.D., and Harry Mushlin, M.D., as well as all other employees, agents, ostensible agents, workmen, and servants.  As stated more fully set forth herein, the claim asserted against this Defendant is for professional negligence of its agents, ostensible agents, servants, and employees.  As stated more fully herein, a claim for direct corporate negligence is also asserted against this Defendant.

6.     In doing the acts alleged herein, Girish Sethuraman, M.D., Jena Lee, M.D., Kishan Kapadia, D.O., Payam Sajedi, M.D., Wei Zheng, M.D., Allan Krumholz, M.D., and Harry Mushlin, M.D., were acting as the actual, apparent and/or ostensible agents and/or employees of Defendant United States of America, that is Baltimore VAMC, acting within the course and scope of their agency and/or employment with Defendant, United States of America and Baltimore VAMC.

7.     All physicians, specialists, fellows, residents, nurses, technicians, and/or other professional and non-professional personnel of the United States of America and specifically Baltimore VAMC, including but not limited to Girish Sethuraman, M.D., Jena Lee, M.D., Kishan Kapadia, D.O., Payam Sajedi, M.D., Wei Zheng, M.D., Allan Krumholz, M.D., and Harry Mushlin, M.D., who are responsible for monitoring, treating, and caring for James Leroy Mummert, Jr. from June 26, 2015 to July 8, 2015 were acting as duly authorized, actual, apparent

2

and/or ostensible agents, servants, and employees of Defendant United States of America and Baltimore VAMC, and acted within the scope of their employment and/or actual, apparent and/or ostensible agency with Defendant, United States of America and Baltimore VAMC. The identity of any other individuals involved in James Leroy Mummert, Jr.'s care cannot be ascertained from the medical records, and this information is in the exclusive custody and control of Defendant and will be the subject of discovery.

8.      At all times relevant hereto, James Leroy Mummert, Jr. was under the medical care, treatment, and attendance of Defendant directly or through its agents, servants and/or employees, including ostensible agents identified above and under their direct control or right to control.

## **GENERAL ALLEGATIONS**

9.      On June 26, 2015 at approximately 12:30 p.m., James Leroy Mummert, Jr. ("Mr. Mummert") (d.o.b. 06/02/1962) presented to Baltimore VAMC with complaints of left-sided chest and abdominal tightness and numbness, left leg numbness, and difficulty urinating.

10.      Upon presentation to Baltimore VAMC, Mr. Mummert came under the care of emergency medicine physician, Girish Sethuraman, M.D. ("Dr. Sethuraman").

11.      Upon neurological examination, Dr. Sethuraman noted that Mr. Mummert had 3/5 left leg strength, and was able to move all limbs and toes.

12.      Dr. Sethuraman also noted that Mr. Mummert required foley catheter placement due to urinary retention, which Mr. Mummert had never previously experienced, and that Mr. Mummert had an elevated white blood cell count of 14.1.

3

13.     Despite Mr. Mummert's symptoms upon presentation, Dr. Sethuraman failed to perform a full neurological examination (including a rectal examination), failed to order a neurology and/or neurosurgery consultation, and failed to order any diagnostic studies.

14.     On June 26, 2015 at approximately 2:30 p.m., in addition to reported numbness and loss of motor control in his left leg, Mr. Mummert reported acute onset of decreased sensation in his right leg.

15.     On June 26, 2015 at approximately 5:00 p.m., Mr. Mummert came under the care of emergency medicine physician, Kishan Kapadia, D.O. ("Dr. Kapadia").

16.     Despite Mr. Mummert's progressing symptoms, and despite noting weakness, dehydration, urinary retention, and chest pain, Dr. Kapadia failed to perform a full neurological examination (including a rectal examination), failed to order a neurology and/or neurosurgery consultation, and failed to order any diagnostic studies.

17.     On June 26, 2015 at approximately 6:15 p.m., Mr. Mummert's strength in both of his lower extremities was recorded as "weak."

18.     On June 26, 2015 at approximately 7:30 p.m., after noting a concern for right lower extremity weakness and that Mr. Mummert was unable to move his left leg, Dr. Kapadia ordered a CT scan and a neurology consultation.

19.     Despite having presented to Baltimore VAMC seven hours with lower extremity weakness, Dr. Kapadia failed to order either the CT scan or the neurology consultation.

20.     On June 26, 2015 at approximately 8:00 p.m., Dr. Kapadia noted that the radiology team requested an MRI of Mr. Mummert's spine to better evaluate a possible inflammatory or infectious spinal cord process.

4

21.     Despite the radiology team's request for an MRI in order to rule out an inflammatory or infectious spinal cord process, Dr. Kapadia ordered a CT scan rather than an MRI.

22.     On June 26, 2015 at approximately 9:40 p.m., the results of Mr. Mummert's CT scan were recorded as unremarkable.  However, radiologist Payam Sajedi, M.D. ("Dr. Sajedi") noted that "evaluation of the spinal cord is grossly limited on CT."  Dr. Sajedi also recommended an MRI, which "would be more sensitive to spinal cord evaluation."

23.     Despite two radiologists' recommendations for an MRI, and despite Mr. Mummert's progressing symptoms over the course of ten hours, Dr. Kapadia failed to order an MRI.

24.     On June 26, 2015 at approximately 10:30 p.m., ten hours after presenting to Baltimore VAMC, Mr. Mummert underwent a neurology consultation performed by Wei Zheng, M.D. ("Dr. Zheng") and Allan Krumholz, M.D. ("Dr. Krumholz").

25.     During their examination, Drs. Zheng and/or Krumholz noted lower extremity numbness and weakness, decreased rectal tone, and numbness in the left arm and left chest.

26.     In their assessment, Drs. Zheng and/or Krumholz noted that spinal cord involvement was "highly suspected"; specifically, "central cord syndrome versus cord compression versus spinal cord inflammation/infection."

27.     Drs. Zheng and/or Krumholz requested neurological checks every four hours, and an MRI of the brain, cervical spine, thoracic spine, and lumbar spine in order to evaluate spinal cord pathology.

28.     Despite Drs. Zheng and/or Krumholz's request for an MRI and despite a high suspicion for spinal cord involvement, no MRI was ordered until twelve hours later.

29.     On June 27, 2015 at approximately 10:15 a.m., Mr. Mummert came under the care of neurosurgeon, Harry Mushlin, M.D. ("Dr. Mushlin").

30.     Upon physical examination, Dr. Mushlin noted that Mr. Mummert's lower extremity weakness had worsened during admission, and now included right-sided weakness in addition to left-sided weakness.  Dr. Mushlin ordered an emergent MRI.

31.     Despite Dr. Mushlin's request for an emergent MRI, and despite Mr. Mummert's worsening symptoms, Mr. Mummert did not receive an MRI until ten hours later.

32.     On June 27, 2015 at approximately 8:00 p.m., over twenty four hours after presentation to Baltimore VAMC, Mr. Mummert was transferred to the University of Maryland School of Medicine/Medical Center ("UMMS"), which is connected to Baltimore VAMC, to undergo an MRI.

33.     MRI results revealed a necrotic peripherally enhancing intramedullary spinal cord lesion extending from the C7-T1 to the T3-T4 levels.

34.     On June 27, 2015 at approximately 9:30 p.m., Mr. Mummert was admitted to the Intensive Care Unit ("ICU") at UMMS.

35.     Upon admission to the ICU, approximately thirty-three hours after his initial presentation to Baltimore VAMC, Mr. Mummert received intravenous antibiotic medication.

36.     On June 27, 2015 at approximately 11:30 p.m., Mr. Mummert was noted to have decreased strength in his left arm, in addition to 0/5 strength in both legs, and no sensation in his left leg.

6

37.     Upon information and belief, after receiving an MRI and after admission to the ICU at UMMS, Mr. Mummert was then transferred back to Baltimore VAMC on June 28, 2015.

38.     On June 28, 2015 at approximately 1:00 p.m., after reporting declining symptoms over the course of several hours, including progressive weakness in the upper and lower extremities and absent rectal tone, Mr. Mummert was transferred back to UMMS for emergent drainage of spinal abscess.

39.     Despite drainage of the abscess and the administration of intravenous antibiotics, Mr. Mummert experienced progressive paralysis and complete loss of function/sensation of bilateral lower extremities and his left upper extremity.

40.     As a result of the negligence of the Defendant, Plaintiff James Leroy Mummert, Jr. suffered permanent and catastrophic injuries, including, inter alia, paraplegia, neurogenic bowel, neurogenic bladder, bowel incontinence, bladder incontinence, flaccid paralysis in both legs, weakness, pain, fatigue, loss of function, loss of mobility, disfigurement, scarring, embarrassment, and humiliation.

41.     Plaintiff James Leroy Mummert, Jr. seeks the full measure of economic and noneconomic damages under Pennsylvania law, including, without limitation, pain and suffering, past and future medical expenses, disfigurement, humiliation, emotional distress, loss of future economic horizons, and loss of enjoyment of life and life's pleasures.

42.     Plaintiff James Leroy Mummert, Jr.'s permanent and catastrophic injuries are due to the negligence of the Defendant, and not any act or failure to act by Plaintiff.

## COUNT I – NEGLIGENCE
## JAMES LEROY MUMMERT v. UNITED STATES OF AMERICA
## D/B/A VETERAN'S ADMINISTRATION MEDICAL CENTER

43.     The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

44.     The negligence of Defendant United States of America d/b/a Baltimore Veterans Administration Medical Center, by and through its employees, servants, agents, apparent agents, ostensible agents and/or workmen, including specifically Girish Sethuraman, M.D., Jena Lee, M.D., Kishan Kapadia, D.O., Wei Zheng, M.D., Allan Krumholz, M.D., Harry Mushkin, M.D., and Payam Sajedi, M.D., and other medical providers whose care and treatment of Mr. Mummert is known to Defendant and not to Plaintiff in the absence of discovery includes the following:

a. Failure to timely and properly evaluate James Leroy Mummert, Jr. upon presentation with complaints suggestive of spinal cord abscess on June 26, 2015 and June 27, 2015;

b. Failure to timely and adequately diagnose James Leroy Mummert, Jr.'s condition, namely, a spinal cord abscess, on June 26, 2015 and June 27, 2015;

c. Failure to recognize signs and symptoms of spinal cord abscess in James Leroy Mummert, Jr. on June 26, 2015 and June 27, 2015;

d. Failure to perform timely and complete neurological examinations on James Leroy Mummert Jr., including rectal tone examinations, upon presentation with complaints

8

suggestive of spinal cord abscess on June 26, 2015 and June 27, 2015;

e. Failure to timely and appropriately respond to multiple notations of worsening of bilateral lower extremity weakness and left upper extremity weakness on June 26, 2015 and June 27, 2015;

f. Failure to order, recommend, and/or perform appropriate and timely diagnostic studies, tests, and/or procedures to diagnose James Leroy Mummert, Jr.'s condition, namely, a spinal cord abscess, on June 26, 2015 and June 27, 2015;

g. Failure to emergently transfer James Leroy Mummert, Jr. to a facility with MRI capabilities upon presentation with complaints suggestive of spinal cord abscess on June 26, 2015 and June 27, 2015;

h. Failing to emergently transfer James Leroy Mummert, Jr. to a facility with emergency surgery capabilities for definitive treatment of spinal cord abscess;

i. Failure to appreciate James Leroy Mummert, Jr.'s complaints of numbness and weakness in his lower extremities, urinary retention, poor rectal tone, recent history of infection/fever, and elevated white blood cell count as symptoms requiring emergent intervention and treatment;

9

j.  Failure to recognize acute onset, bilateral numbness and weakness, decreased sensation, urinary retention, poor rectal tone, recent history of infection/fever, and elevated white blood cell count as symptoms requiring emergent intervention and treatment;

k.  Failure to timely examine and treat James Leroy Mummert, Jr.;

l.  Failure to respond emergently to James Leroy Mummert, Jr.'s worsening neurologic condition;

m.  Failure to promptly treat James Leroy Mummert, Jr.'s spinal abscess;

n.  Failure to emergently perform surgery or otherwise emergently diagnose and treat James Leroy Mummert's spinal abscess;

o.  Failure to properly supervise residents and nursing staff in their care and treatment of James Leroy Mummert, Jr.;

p.  Failure to timely and appropriately communicate James Leroy Mummert, Jr.'s condition among medical providers; and

q.  Failure to adhere to all policies, practices and/or procedures to ensure timely and appropriate diagnosis and treatment of patients presenting with spinal cord abscess, including James Leroy Mummert, Jr.

45.  The negligence of Defendant United States of America d/b/a Baltimore Veterans Administration Medical Center, by and through its aforementioned agents, servants, workmen and/or employees as set forth above, caused the injuries and damages suffered by Plaintiff, James

Leroy Mummert, Jr.

46.     Injuries to Plaintiff James Leroy Mummert, Jr. were caused solely by the negligence of Defendant United States of America d/b/a Baltimore Veterans Administration Medical Center as set forth above, and were not caused or contributed thereto by any negligence on the part of Plaintiff James Leroy Mummert, Jr.

47.     The negligence of Defendant United States of America d/b/a Baltimore Veterans Administration Medical Center directly and proximately caused the injuries to Plaintiff James Leroy Mummert, Jr.

WHEREFORE, Plaintiff James Leroy Mummert, Jr. respectfully demands damages against all defendants individually, jointly, and severally, in an amount in excess of local arbitration limits, exclusive of interest, prejudgment interest, and costs.

<div style="text-align:center; margin-left:auto; width:50%">

KLINE & SPECTER, P.C.

JAMES J. WALDENBERGER, ESQUIRE
DAVID K. INSCHO, ESQUIRE
ELIA A. ROBERTSON, ESQUIRE
1525 Locust Street, 19th Floor
Philadelphia, Pennsylvania 19102
215-772-1000
Attorneys for Plaintiff

</div>

Date: <u>April 19, 2018</u>