IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES LEROY MUMMERT, JR.** | : | Civil No. 18-CV-856 |
| **Plaintiff,** | : | |
| v. | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **Defendant.** | : | Judge Sylvia H. Rambo |

**M E M O R A N D U M**

Before the court is the United States' motion to dismiss for lack of subject matter jurisdiction, for judgment on the pleadings, and/or for summary judgment. (Doc. 61.) For the reasons set forth below, the motion to dismiss for lack of subject matter jurisdiction will be denied, the motion for judgment on the pleadings will be granted in part, and the motion for summary judgment will be granted in part.

**I.  BACKGROUND**

This FTCA medical malpractice action arises from Plaintiff James Leroy Mummert, Jr.'s claims that in 2015, his medical providers at the Baltimore Veterans Administration Medical Center ("Baltimore VA") failed to properly evaluate and timely treat a spinal cord abscess, causing him to suffer permanent paralysis.

The complaint alleges that on June 26, 2015, Mummert presented to the Baltimore VA emergency department with complaints including left-side chest and abdominal tightness and numbness. (Doc. 1 ¶ 9.) Mummert was evaluated by

1

numerous doctors, including attending physicians Girish Sethuraman and Kishan Kapadia, who noted weakened leg strength and certain limb paralysis. (*Id.* ¶¶ 11, 15, 17.)

After spending several hours in the emergency department and reporting progressive symptoms, including decreased sensation in his legs, Mummert underwent a CT scan and neurology consultation by resident physician Wei Zheng. (*Id.* ¶¶ 18-19, 21-22, 24.) Despite the neurology consultation finding that "spinal cord involvement was highly suspected," and notwithstanding warnings from the radiology team that evaluation of the spinal cord was "grossly limited" by CT scan, Mummert did not undergo an MRI until the following day—more than thirty-one hours after he initially presented to the emergency room. (*Id.* ¶¶ 22, 26, 32.) The MRI results revealed a "necrotic peripherally enhancing intramedullary spinal cord lesion extending from the C7-T1 to the T3-T4 levels." (*Id.* ¶ 33.) Mummert was admitted to the Intensive Care Unit at the University of Maryland Medical Center ("UMMC"), where he received intravenous antibiotic medication. (*Id.* ¶ 35.) After experiencing "progressive paralysis and complete loss of function/sensation of bilateral lower extremities and his left upper extremity," Mummert underwent surgery and was later transferred for acute spinal rehabilitation in July 2015. (*Id.* ¶ 39; Doc. 62-1 p. 198.)

In April 2018, Mummert initiated this action by filing a complaint against the United States under the Federal Tort Claims Act, alleging the government is liable for the purported negligence of Mummert's physicians in failing to properly evaluate and treat his spinal cord lesion. (Doc. 1 ¶¶ 43-47.) Specifically, physicians who evaluated him after he presented to the Baltimore VA emergency department, including emergency attending physicians Sethuraman and Kapadia, emergency resident Dr. Jena Lee, and neurology resident Dr. Zheng. (*See id.* ¶¶ 10-13, 15-16, 24-28.) Mummert further seeks to hold the government liable for the alleged negligence of physicians who evaluated and treated him after he was transferred from the Baltimore VA emergency department, who include, with the benefit of discovery, attending physician Violeta Rus, and resident physicians Carly Gordon, Samuel Stern, Mansai Long, and Najmeh Izadpanah. (*See id.* ¶ 44; Doc. 70 pp. 10-11.)

The government has filed a motion to dismiss for lack of subject matter jurisdiction, for judgment on the pleadings, and/or for summary judgment. (Doc. 61.) The motion has been fully briefed and is ripe for disposition.

## II.     LEGAL STANDARDS

"It is an elementary principle that federal courts are courts of limited jurisdiction, empowered to hear cases only as provided for under Article III of the Constitution and congressional enactments pursuant thereto." *Employers Ins. Of*

*Wausau v. Crown Cork & Seal, Co, Inc.*, 905 F.2d 42,45 (3d Cir. 1999). "A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of the plaintiff's complaint." *Vieth v. Pennsylvania*, 188 F.Supp.2d 532, 537 (M.D. Pa. 2002) (quoting *Ballenger v. Applied Digital Solutions, Inc.*, 189 F.Supp.2d 196, 199 (D. Del. 2002)). When presented with a Rule 12(b)(1) motion, the plaintiff "will have the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006); *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

Under Federal Rule of Civil Procedure 12(c), once the pleadings are closed, but within such time as to not delay trial, a party may move for judgment on the pleadings. The standard of review is identical to that of a motion to dismiss under Rule 12(b)(6), except that the court reviews not only the complaint, but also the answer and written instruments attached to the pleadings. See *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991); *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004). Because a Rule 12(c) motion "calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom" in the non-movant's favor. *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006). Judgment on the pleadings is appropriate only when the moving party "clearly establishes that no material issue of fact remains to

be resolved and that he is entitled to judgment as a matter of law." *Minn. Lawyers Mut. Ins. Co. v. Ahrens*, 432 F. App'x 143, 147 (3d Cir. 2011).

Federal Rule of Civil Procedure 56(a) provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law and is "genuine" only if there is a sufficient evidentiary basis for a reasonable factfinder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party" and draw all reasonable inferences in its favor. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must

"go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322–23. "Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989)).

### III. DISCUSSION

Under the FTCA, the government submits itself to liability for injuries caused by the negligent or wrongful act or omission of any government employee acting within the scope of his or her employment. 28 U.S.C. § 1346(b)(1). The United States is subject to liability under circumstances where the government, if a private person, would be liable. *Id*. The government is the only proper defendant in an FTCA action. 28 U.S.C. § 2679 (a). "[T]he substantive law of the state where the tort occurred determines the liability of the United States." *Raplee v. United States*, 842 F.3d 328, 331 (4th Cir. 2016).

The government's motion to dismiss for lack of subject matter jurisdiction argues that Mummert's failure to comply with the Health Care Malpractice Claims Act ("HCMCA") precludes the court from exercising subject matter jurisdiction. Under Maryland law, a medical malpractice plaintiff must comply with the requirements of the HCMCA prior to filing a complaint, which include submitting the claim to the Maryland Health Care Alternative Dispute Resolution Office ("HCADRO") and supplying a qualified expert certificate describing the merits of the underlying claim. Md. Code Ann., Cts. & Jud. Proc. §§ 3-2A-04(a), (b); *Rodriguez v. United States*, No. 21-CV-411, 2022 WL 3156234, at *3 (D. Md. Aug. 8, 2022); *Zander v. United States*, 843 F. Supp. 2d 598, 604 (D. Md.), *aff'd*, 494 F. App'x 386 (4th Cir. 2012). The government argues that Mummert failed to submit his claim to the HCADRO prior to filing the federal complaint, and that it cannot be liable for the negligence of any individuals not specifically named in those expert certificates which Mummert belatedly submitted to the office. (*See* Doc. 64 pp. 20-26).

Contrary to the government's arguments, however, Mummert's failure to adhere to Maryland's procedural requirements for filing a malpractice claim is not fatal to his case. The Third Circuit recently clarified that "the FTCA incorporates only state law that governs liability in tort," such as rules that "define a cause of action" and those which "otherwise determine the 'manner' and 'extent' of liability."

7

*Wilson v. United States,* 79 F.4th 312, 317 (3d Cir. 2023) (holding that compliance with the Pennsylvania certificate of merit requirement is not required to bring a FTCA action). The Maryland procedural requirements at issue are neither elements of a malpractice claim nor rules defining a negligence cause of action, but instead are pre-pleading "barrier[s] to entry meant to weed out malpractice claims." *Id*. at 318. Such "technical requirement[s] dictating what plaintiffs must do in . . . state court to vindicate their rights" are "not incorporated by the FTCA." *Id.*; *see also Pledger v. Lynch*, 5 F.4th 511 (4th Cir. 2021) (holding that West Virginia certificate of merit requirements are not incorporated into the FTCA); *DeBlois v. Corizon Health, Inc.*, No. 20-1816, 2021 WL 3142003, at *21 (D. Md. July 23, 2021) ("At a minimum, then, *Pledger* appears to instruct that [the plaintiff's FTCA] suit cannot be dismissed for failure to comply with the prefiling certificate requirements in the HCMCA[.]"); *Severe v. United States*, No. 20-3404, 2021 WL 4521345, at *16 (D. Md. Oct. 1, 2021) (failure to comply with HCMCA "cannot serve as grounds" for dismissing an FTCA claim). Dismissal for lack of subject matter jurisdiction is therefore not appropriate, and there is no basis for confining Mummert's negligence claim to those individuals he named in his dispute resolution filing.

As to the United States' motion for judgment on the pleadings, the government argues that the complaint does not contain sufficient facts to support each element of a negligence claim and fails to assert how each relevant physician

violated the standard of care. (Doc. 64 p. 27.) To state a claim for negligence in Maryland, the plaintiff must show "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Rosenblatt v. Exxon Co.*, U.S.A., 642 A.2d 180, 188 (Md. 1994); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010).

    Here, the complaint adequately states a claim for relief against the government based on the alleged negligence of physicians Sethuraman, Kapadia, Zheng, and Lee. The complaint alleges numerous specific breaches of the duty of care owed by these members of Mummert's medical team upon his presentation to the emergency department of the Baltimore VA. The complaint details a collection of ostensibly serious and fast-progressing neurological and other symptoms experienced by Mummert after he presented to the emergency room—including an inability to move his limbs and toes, as well as chest pain—and specifically alleges numerous delays and omissions by the providers in addressing the matters. (*See e.g.*, Doc. 1 ¶¶ 11-14) (alleging Dr. Sethuraman failed to perform or order a full neurology examination or any diagnostic studies despite Mummert presenting limb numbness and limb and toe paralysis); (*Id.* ¶¶ 14-19) (alleging Dr. Kapadia failed to perform a full neurology examination, and failed to order a neurological consultation or CT scan for multiple

9

hours, despite Mummert experiencing rapidly progressing symptoms including acute onset of decreased sensation in right leg, chest pain, dehydration, urinary retention). The complaint likewise alleges facts to support that, notwithstanding Mummert's rapidly progressing symptoms, physicians in the emergency room did not timely act on radiologist recommendations for Mummert to receive an MRI, given the ability to evaluate his spinal cord was "grossly" limited through CT scan. (*Id*. ¶¶ 20-23.) According to the complaint, some of the physicians that evaluated Mummert in the emergency room, including neurology resident Zheng, even suspected he was experiencing spinal cord problems, but nonetheless failed to ensure he underwent a timely MRI. (*Id.* ¶¶ 24-28.) Mummert's allegations in this regard primarily focus on the actions and omissions of physicians Sethuraman, Kapadia, and Zheng. But the complaint also alleges negligence more generally by Dr. Lee, and the government's answer suggests Dr. Lee was one of the physicians who initially evaluated Mummert in the emergency room as outlined in Paragraphs 11 and 12 of the complaint, and whose breach of duty of care is alleged in Paragraph 13. The complaint's averments against these physicians suggest that they failed to timely provide a critically-needed neurological examination and diagnostic procedure despite observing Mummert's fast progressing symptoms and recommendations from radiology specialists. The complaint raises a plausible inference that the delays prevented the timely diagnosis and treatment of Mummert's

spinal cord abscess, causing him to experience progressive and permanent paralysis and other debilitating medical conditions. (*Id.* ¶¶ 38-40, 44.) Accordingly, the complaint adequately pleads a negligence claim based on the actions and omissions of physicians Sethuraman, Kapadia, Zheng, and Lee.[1]

Nevertheless, the government is correct in arguing that the complaint does not contain sufficient facts to support an inference that the physicians who evaluated Mummert after he was transferred from the emergency room breached any standard of care. While the complaint avers that, after he was evaluated in the Baltimore VA emergency department, Mummert was transferred to different departments within the Baltimore VA and the UMMC, the pleadings do not contain any substantive facts to suggest that the physicians working in those departments acted negligently. To the extent Mummert seeks to hold the government liable for the actions and omissions of such physicians, the complaint fails to state a claim for relief, and Mummert will be granted leave to file an amended complaint. Leave to amend is proper under the circumstances "to facilitate a proper decision on the merits" and in light of the limited facts available to Mummert at the time he initiated this action. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

---

[1] The complaint also alleges negligence based on the actions of physicians Krumholz, Mushkin, and Sajedi, but Mummert's submissions make clear he has abandoned those theories. (Doc. 70 p. 37 n. 9; Doc. 77 p. 9 n.3.)

As to the United States' motion for summary judgment, the government argues that Mummert's negligence claim should be dismissed to the extent he asserts liability stemming from the actions and omissions of attending physicians Sethuraman and Kapadia, as well as resident physicians Zheng and Lee.[2] According to the United States, the physicians all served in the Baltimore VA as independent contractors, and none was an employee of the government.

Under the FTCA, the government is liable for personal injury or death stemming from the negligent or wrongful acts or omissions of an "employee of the

---

[2] The United States' request for summary judgment to the extent Mummert asserts negligence stemming from the actions of physicians Rus, Gordon, Stern, Long, and Izadpanah is moot, since the court will grant the government's motion for judgment on the pleadings as to all doctors other than Sethuraman, Kapadia, Zheng, and Lee. Nevertheless, even if the request for summary judgment was not moot, the government's motion fails to demonstrate that the independent contractor exception applies to Rus, Gordon, Stern, Long, and Izadpanah as a matter of law. The allegations in this case appear to focus on Dr. Rus' service as an inpatient attending on the medicine floor of the Baltimore VA (*see* Doc. 62-3 pp. 39-41), but the United States' submissions shed no meaningful light on the circumstances of her employment, including whether she worked in the Baltimore VA pursuant to an independent contractor agreement, whether the government or UMMC paid her wages, and whether the government or UMMC had authority to control her schedule and day-to-day responsibilities. (*See* Doc. 12-3 p. 40.) The contractor agreement between the University of Maryland and the United States appears to govern only the separate VA emergency department, and Dr. Rus's testimony on the matter was limited to a single conclusory statement in which she claimed to have carried out her work as an employee of the University of Maryland. (Doc. 62-3 p. 40) ("Q. At the time that you were working as the inpatient attending back in June of 2015 at the Baltimore VA [. . .] who were you employed by? A. University."). In the absence of evidence as to control or any other factors relevant to the independent contractor exception, the court cannot conclude with any certainty that Rus carried out her responsibilities at the Baltimore VA as an independent contractor. Moreover, because the government's answer and the resident agreement indicate that resident physicians are employees of the Baltimore VA, the record does not foreclose that Gordon, Stern, Long, and Izadpanah were government employees for purposes of the FTCA.

12

government." 28 U.S.C. § 1346(b)(1). The negligent actions of independent contractors do not extend liability to the government. *United States v. Orleans*, 425 U.S. 807, 814 (1976). "Whether one is an employee of the United States or of an independent contractor is determined by reference to federal law." *Cavazos ex rel. Cavazos v. United States*, 776 F.2d 1263, 1264 (5th Cir. 1985) (citing *Logue v. United States*, 412 U.S. 521 (1973)). The Supreme court has clarified that the question of whether an individual acts as an independent contractor or employee for purposes of FTCA liability rests largely on the existence of federal authority to control and supervise the detailed physical performance of day-to-day operations, as opposed to whether an individual must comply with federal standards and regulations. *See Logue*, 412 U.S. at 528; *see also Norman v. United States*, 111 F.3d 356, 357 (3d Cir. 1997) ("The critical factor used to distinguish a federal agency employee from an independent contractor is whether the government has the power 'to control the detailed physical performance of the contractor.'") (quoting *United States v. Orleans*, 425 U.S. 807, 814 (1976)).

Here, the United States' motion demonstrates that attending physicians Sethuraman and Kapadia were independent contractors and not government employees for purposes of the FTCA. Both were employed by the UMMC and worked in the Baltimore VA pursuant to a contract for emergency services between the University of Maryland and the government—one which makes clear that neither

13

physician was employed by the government or controlled by a government employee. In the agreement, the University of Maryland agreed to provide "professional direction of all clinical care and special procedures" performed in the emergency department, and to select its own director to "oversee all day-to-day operations of the Emergency Department." (Doc. 62-1 pp. 20, 22.) The contract provides no indication that any government employee retained authority to influence the physicians' medical judgment and unequivocally provides "[t]he U.S. Government may . . . . retain no control over the medical, professional aspects of services rendered (e.g. professional judgments, diagnosis for specific medical treatment)." (*Id*. p. 23.) *See also* Norman *v. United States,* 111 F.3d 356, 357–58 (3d Cir. 1997) (affirming application of the independent contractor exception to an individual whose employment was governed by a contract specifying that "Government direction or supervision of contractor's employees directly or indirectly, shall not be exercised."). Considering the absence of control over Sethuraman's and Kapadia's daily responsibilities and professional judgment by any federal employee, Mummert cannot hold the United States liable for their negligence. *See Moreno v. United States*, 387 F. App'x 159, 161 (3d Cir. 2010) (dismissing FTCA claim against contracted medical providers where the plaintiff's allegations did not "allow for the inference that the United States had 'authority' to

14

control the medical providers' right to exercise independent medical judgment.") (citations omitted).

Resident physicians Lee and Zheng are a different story because the United States' answer admits that both doctors were employees of the Baltimore VA, in accordance with a resident agreement designating them as much and clarifying that their actions fell within the scope of the FTCA. (Doc. 24 p. 6; Doc. 62-1 p. 142.) Though the government urges the court to apply Maryland's borrowed servant doctrine to classify both physicians as borrowed employees of UMMC attendings, caselaw is clear that federal law controls an individual's employment status under the FTCA. *See e.g.*, *Cavazos,* 776 F.2d at 1264. And in any event, the Maryland borrowed servant doctrine is "immaterial" where, as here, "the parties contractually agreed that one or the other of them should bear the risk of a particular employee's negligent acts[.]" *NVR, Inc. v. Just Temps, NC.*, 31 F. App'x 805, 807 (4th Cir. 2002); *see Goodie v. United States*, No. 10-CV-3478, 2013 WL 968198, at *11 (D. Md. Mar. 12, 2013) ("Under Maryland law, whatever the status of an employee under the 'borrowed servant' doctrine, the parties may allocate between themselves the risk of any loss resulting from the employee's negligent acts.") (internal citation and quotation marks omitted). The resident agreement between the Baltimore VA and UMMC specified that all physicians' "activities within the scope of their Hospital duties" were "covered by the Federal Tort Claims Act" (Doc. 62-1 p. 142.)

By including the clause, the parties agreed that the Baltimore VA bears the risk of resident physicians' negligence, and as such, the Maryland borrowed servant doctrine cannot apply. *See Goodie*, 2013 WL 968198, at *11-12 (declining to apply the borrowed servant doctrine where resident physician's employment was controlled by a similar agreement between the UMMC and the Baltimore VA).[3]

## IV. CONCLUSION

For the reasons set forth above, and in accordance with the court's recently issued order (Doc. 87), the United States' motion to dismiss for lack of subject matter jurisdiction is denied; the United States' motion for judgment on the pleadings is granted to the extent the complaint alleges negligence by individuals other than

---

[3] The United States is also entitled to summary judgment to the extent Mummert alleges "direct negligence" by the government for breach of a non-delegable duty notwithstanding the employment status of the Baltimore VA physicians. (Doc. 70 pp. 49-52.). As numerous other courts in this circuit and elsewhere have held, allowing these theories of liability would frustrate the purpose of the independent contractor exception and represent a dramatic expansion of FTCA liability. *See, e.g.*, *Norman v. United States*, No. 95-CV-4111, 1996 WL 377136, at *5 (E.D. Pa. July 3, 1996), *aff'd*, 111 F.3d 356 (3d Cir. 1997) (refusing to hold the United States liable under Pennsylvania nondelegable premises liability law where doing so would contravene the independent contractor exception); *Nolden v. United States*, No. 1:12-CV-01541, 2014 WL 1513993, at *5 (M.D. Pa. Apr. 16, 2014) (declining to find that the government had a non-delegable statutory to provide medical care eligible veterans in part because doing so would "abrogate the independent contractor exemption"); *Berrien v. United States*, 711 F.3d 654, 658 (6th Cir. 2013) ("Michigan's nondelegable duty doctrine cannot render the United States liable for [independent contractor's] negligence; imposing such liability would permit state law to abrogate the FTCA's contractor exception."); *Berkman v. United States*, 957 F.2d 108, 113 (4th Cir. 1992) ("[W]e agree with the district court's ruling that the application of the independent contractor exception of § 2671 shields the United States from tort liability which might otherwise arise from the performance of duties which were reasonably delegated to the contractor."); *Irizarry v. United States*, No. 18-CV-8309, 2019 WL 4785738, at *5 n. 14 (D.N.J. Sept. 30, 2019) ("New Jersey state courts have interpreted this duty as nondelegable. Under the FTCA, however, the Government's duty of care could be delegable, state law notwithstanding.").

physicians Sethuraman, Kapadia, Zheng and Lee, referenced in the order as the "non-emergency personnel"; and the United States' motion for summary judgment is granted to the extent the complaint alleges negligence by doctors Sethuraman and Kapadia, is denied to the extent the complaint alleges negligence by doctors Zheng and Lee, and is otherwise denied as moot.

Dated: October 23, 2023

                                          */s/ Sylvia H. Rambo*
                                          Sylvia H. Rambo
                                          U.S. DISTRICT JUDGE