# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES LEROY MUMMERT, JR.,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

No. 1:18-CV-00856

(Chief Judge Brann)[1]

## MEMORANDUM OPINION

### SEPTEMBER 27, 2024

## I.   PROCEDURAL AND FACTAL BACKGROUND[2]

In April 2018, Plaintiff James Leroy Mummert, Jr., filed a one-count complaint against the United States of America (the "United States"), seeking damages for negligence under the Federal Tort Claims Act, 42 U.S.C. § 1346, *et seq.* ("FTCA").[3] The lawsuit was premised on the negligence of Drs. Girish Sethuraman, Jena Lee, Kishan Kapadia, Payam Sajedi, Wei Zheng, Allan Krumholz, and Harry Mushlin, following Mummert's presentation to the Baltimore Veterans' Administration Medical Center ("Baltimore VAMC").[4] According to the complaint,

---

[1]   This case has been reassigned to the undersigned jurist following the retirement from the Court of the Honorable Sylvia H. Rambo.

[2]   As several of the United States' arguments turn on the contents of both Mummert's original and amended complaints, I sketch out their general contours here. Moreover, although the United States has moved for summary judgment in the alternative, that motion is rendered moot by the foregoing analysis. Other facts will be set out as they become relevant.

[3]   Complaint, Doc. 1 at 8.

[4]   *Id.* ¶5.

these physicians breached their duty of care to Mummert when they failed to timely order an MRI to diagnose a spinal cord abscess.[5]

Mummert presented to the Baltimore VAMC on June 26, 2015, at approximately 12:30 p.m.[6] His complaint alleges that, despite concerning symptoms which would continue manifesting as he was seen by various physicians (including Drs. Sethuraman, Kapadia, Zheng, and Krumholz),[7] and despite multiple physicians recommending that he receive an MRI scan (including unspecified radiologists and Drs. Sajedi, Zheng, and Krumholz),[8] Baltimore VAMC's emergency medicine physicians failed to order an MRI exam from Mummert's June 26, 12:30 p.m. presentation until his 10:15 a.m. consultation with Dr. Mushlin the next day.[9] Dr. Mushlin ordered an "emergent MRI," but Mummert did not receive it until ten hours later.[10] At 8:00 p.m. that day, Mummert was finally transferred to the University of Maryland Medical Center ("UMMC"), which is connected to Baltimore VAMC, to undergo an MRI.[11] Despite drainage of Mummert's spinal abscess after it was detected on the MRI, Mummert suffered catastrophic injuries, including paraplegia.[12] Mummert's complaint noted that he sought damages for the negligence

---

[5]  *Id.* ¶35.
[6]  *Id.* ¶9.
[7]  *Id.* ¶¶9, 11–12, 14, 16–18, 25.
[8]  *Id.* ¶¶20, 22, 27.
[9]  *Id.* ¶¶9–31.
[10]  *Id.* ¶31.
[11]  *Id.* ¶32.
[12]  *Id.* ¶33–40.

of any "other medical providers whose care and treatment of Mr. Mummert is known to Defendant and not known to Plaintiff in the absence of discovery."[13]

By the time Mummert submitted his expert reports, five additional physicians—Drs. Carly Gordon, Mansai Long, Samuel Stern, Namjeh Izadpanah,[14] and Violeta Rus (the "internal medicine physicians")—were named.[15] After discovery and many extensions of the case management deadlines, the United States filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1), Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c), and Motion for Summary Judgment under Federal Rule of Civil Procedure 56 in June 2022.[16] In October 2023, my former colleague, the Honorable Sylvia H. Rambo, granted the motion for judgment on the pleadings as to any physicians outside of the emergency team physicians, and granted Mummert leave to amend as to the other physicians, including Drs. Gordon, Long, Stern, Izadpanah, and Rus.[17]

Mummert filed his amended complaint in November 2023.[18] In addition to the physicians set forth in his original complaint, Mummert also named Drs. Rus, Gordon, Stern, Long, and Izadpanah.[19] The new allegations in Mummert's amended

---

[13]   *Id.* ¶44.
[14]   The pleadings and briefings refer to this physician as both "Izadpanah" and "Izadpanaha." I refer to her as "Izadpanah" for purposes of this Memorandum Opinion.
[15]   *See* Brief in Support, Doc. 64 at 23.
[16]   Motion for Summary Judgment, Doc. 61.
[17]   Order, Doc. 87.
[18]   Amended Complaint, Doc. 89.
[19]   *Id.* ¶7.

complaint track those of his original complaint, alleging that internal medicine physicians did not order an MRI exam despite noting his progressing symptoms. Mummert was first "pending admission" to the internal medicine team of Drs. Gordon, Long, and Rus at the time of his June 26, 9:30 p.m. evaluation, during which Dr. Zheng noted the likelihood of spinal cord involvement and recommended an MRI exam.[20] Following Mummert's transfer from the Emergency Room to the medicine floor, either at 10:25 p.m. or 1:15 a.m. on June 27,[21] Dr. Gordon began an admission note describing Mummert's progressive symptoms and starting a "plan to get MRI," but did not order a "STAT MRI."[22] A new team consisting of Drs. Stern, Izadpanah, and Rus took over at 9:00 a.m.; Dr. Izadpanah also noted Mummert's progressively worsening neurological symptoms, and Dr. Stern entered a "routine" MRI request.[23] Like the original complaint, the amended complaint then details Dr. Mushlin's examination of Mummert, his request for an emergent MRI, Mummert's eventual transfer to UMMC at approximately 8:00 p.m. to receive the MRI exam, and the consequences of this delay.[24]

In January 2024, the United States filed the pending motion, which seeks dismissal pursuant to Rules 12(b)(1) and 12(b)(6), and summary judgment pursuant

---

[20] *Id.* ¶¶35, 38–39, 41–42.
[21] *Id.* ¶¶44–45.
[22] *Id.* ¶¶46–49.
[23] *Id.* ¶¶53–57.
[24] *Id.* ¶¶57–69.

to Rule 56.[25] The motions are now ripe for disposition. For the reasons stated below, the United States' motion to dismiss for lack of jurisdiction is granted as to any claims stemming from Dr. Violeta Rus; the motions are otherwise denied.

## II.   ANALYSIS

"It is well settled that the United States enjoys sovereign immunity from suits and, accordingly, may be sued only if it has waived that immunity."[26] "In 1946, Congress passed the FTCA, which waived the sovereign immunity of the United States for certain torts committed by federal employees" acting within the scope of their employment.[27] "Federal courts have jurisdiction over these claims if they are 'actionable under [Title 28 U.S.C.] §1346(b)," which incorporates six elements.[28] An FTCA claim must be:

> [1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.[29]

The United States limits its arguments to a narrow subset of claims relating to specified physicians. The United States first argues that this Court should apply the

---

25  Motion Per Rule 12(b)(1), 12(b)(6) and 56, Doc. 92.
26  *Beneficial Consumer Discount Co. v. Poltonowicz*, 47 F.3d 91, 93–94 (3d Cir. 1995).
27  *FDIC v. Meyer*, 510 U.S. 471, 475–76 (1994).
28  *Brownback v. King*, 592 U.S. 209, 212 (2021) (citing *Meyer*, 510 U.S. at 477).
29  *Meyer*, 510 U.S. at 477 (quoting 28 U.S.C. § 1346(b)).

statute of limitations to bar Mummert's amended claims against the internal medicine physicians. Second, it argues for the dismissal of any claims relating to Dr. Izadpanah, whose alleged negligence is set out in the least detail. Third, the parties dispute how the law of the case doctrine relates to Judge Rambo's rulings on Maryland's borrowed servant doctrine. Fourth, the parties again dispute the application of the law of the case doctrine and disagree over whether Dr. Rus is an independent contractor or an employee for purposes of the FTCA.

## A.    Leave to Amend

The United States argues that this Court should apply the statute of limitations to bar Mummert's amended claims relating to the conduct of the internal medicine physicians, and provides briefing arguing that the statute of limitations should not be tolled.[30] But this Court cannot reach the statute of limitations issue at all. Judge Rambo already granted Mummert leave to amend as to these claims, and an analysis of neither Federal Rule of Civil Procedure 15(c)'s relation-back rules nor Federal Rule of Civil Procedure 15(a)'s rules regarding leave to amend requires reconsideration of that decision.[31]

---

[30]  Brief in Support, Doc. 95 at 13.
[31]  Because Judge Rambo granted leave to amend, I explain why this holding was correct. I do not opine on the merits of Mummert's alternative argument that FTCA claims are permissible "where the complaints at issue alleged negligence of federal government employees who were neither named in the complaint nor otherwise identified." Brief in Support, Doc. 70 at 33–34.

First, what the United States really requests is reconsideration. This issue has already been briefed and decided by Judge Rambo. Among the United States' arguments in the prior round of briefing was that, because the internal medicine physicians were named in the expert reports but not the complaint,[32] the Court should dismiss all claims against the United States based on these physicians' conduct.[33] Mummert responded that pleading FTCA claims involving "unnamed" physicians is appropriate under FTCA precedent, and argued in the alternative that he should be permitted to amend his complaint.[34]

Judge Rambo appeared to take no issue with the fact that these five physicians were not explicitly named in the original complaint, because she dismissed these claims on the merits. Judge Rambo held that the complaint did not allege sufficient detail about the negligence of any physicians "after [Mummert] was transferred from the emergency room" to survive judgment on the pleadings.[35] Furthermore, she granted Mummert leave to amend these claims without prejudice—including the claims against all five internal medicine physicians—"in light of the limited facts available to Mummert at the time he initiated this action."[36]

---

[32] The United States also objected that these physicians had not been named in Mummert's Maryland expert certificates, which are required under Maryland's Health Care Malpractice Claims Act. Md. Code Ann., Cts. & Jud. Proc. §§ 3-2A-04(a), (b). But Judge Rambo ruled that Maryland's exhaustion requirements did not apply under the FTCA. Memorandum Opinion, Doc. 88 at 7–8 (relying upon *Wilson v. United States*, 79 F.4th 312, 317 (3d Cir. 2023)).

[33] Brief in Support, Doc. 64 at 18–19.

[34] Brief in Opposition, Doc. 70 at 33-36.

[35] Memorandum Opinion, Doc. 88 at 11, 12 n.1, 17.

[36] *Id.* at 11; Order, Doc. 87 ¶2.

So the United States requests reconsideration, and its request is not timely. Under Federal Rule of Civil Procedure 59(e), a "motion to alter or amend judgment must be filed no later than 28 days after the entry of the judgment." The United States' request therefore must be treated as a motion for reconsideration under Federal Rule of Civil Procedure 60(b), which provides a "substantively interchangeable" "mechanism for relief from judgment."[37] But even motions under Rule 60(b) "must be made within a reasonable time."[38] Yet, despite being aware of Mummert's leave to amend since September 2023, the United States did not challenge this ruling until the pending motion, filed on January 22, 2024.[39] As a result of this four-month delay, the United States requests reconsideration of the decision to grant Mummert leave to amend after he drafted and filed his amended complaint. That raises questions as to whether the request was made within a reasonable time.

Be that as it may, to support a motion for reconsideration, a party must show "at least one of the following: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or," as relevant here, "(3) the need to correct a clear error of law or fact or

---

[37] *Walker v. Astrue*, 593 F.3d 274, 279 (3d Cir. 2010). *See Ahmed v. Dragovich*, 297 F.3d 201, 209 (3d Cir. 2002) (treating an untimely Rule 59(e) motion as a Rule 60(b) motion).

[38] Fed. R. Civ. P. 60(c)(1).

[39] Motion Per Rule 12(b)(1), 12(b)(6) and 56, Doc. 92.

to prevent manifest injustice."[40] This third ground for reconsideration only warrants relief if "the Court is left with the definite and firm conviction that a mistake has been committed."[41] The parties must show "more than mere disagreement with the earlier ruling; [they] must show that the . . . Court committed a direct, obvious, or observable error, and one that is at least of some importance to the larger proceedings."[42] A motion for reconsideration "addresses only factual and legal matters that the court may have overlooked."[43]

The statute of limitations does not apply to these claims because they relate back to Mummert's original complaint under Federal Rule of Civil Procedure 15(c)(1)(B). Federal Rule of Civil Procedure 15(c) sets out what is referred to as the "relation-back doctrine," which specifies distinct standards to justify the belated addition of a new claim or a new party. Rule 15(c)(1)(B) states that an amendment relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Rule 15(c)(1)(C) applies when "the amendment changes the party or the naming of the party against whom the claim

---

[40] *In re Vehicle Carrier Servs. Antitrust Litig.*, 846 F.3d 71, 87 (3d Cir. 2017) (cleaned up).

[41] *Prusky v. ReliaStar Life Ins. Co.*, 352 F.3d 252, 258 (3d Cir. 2008).

[42] *In re Energy Future Holdings Corp.*, 904 F.3d 298, 312 (3d Cir. 2018) (cleaned up).

[43] *Lischner v. Upper Darby Twp.*, No. 05-4546, 2007 U.S. Dist. LEXIS 54528, at *3 (E.D. Pa. Jul. 26, 2007) (quoting *Glenolden Energy Co. v. Borough of Glenolden*, 836 F.Supp. 1109, 1122 (E.D. Pa. 1993)).

is asserted." In addition to Rule 15(c)(1)(B)'s requirements, Rule 15(c)(1)(C) requires that:

> within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

The United States argues that Rule 15(c)(1)(C) should apply to Mummert's complaint. But Rule 15(c)(1)(C) plainly does not apply by its text—the amended complaint did not change the party or the naming of the party against whom the claim is asserted, because both the complaint and amended complaint list only one defendant: the United States. The United States attempts to circumvent this conclusion by arguing that it "stands in the shoes of the physicians that Mr. Mummert alleged caused him injury," and so it "may raise the same defenses as a physician sued under like circumstances."[44] And, had these five physicians been added as parties—the theory goes—they could have argued that Rule 15(c)(1)(C) applies.

The United States's argument is built upon flawed premises, and a key misunderstanding of the FTCA. Because the FTCA provides that the United States is liable for the negligent acts of "any employee of the Government while acting

---

[44] Reply Brief, Doc. 105 at 5.

within the scope of his office or employment,"[45] "[t]he act shadows precisely the common law of respondeat superior liability, providing that the United States is subject to suit for the negligent acts of 'any employee of the Government while acting within the scope of his office or employment.'"[46] "In this case, then, the United States stands in the shoes that a similarly-placed private employer of physicians, i.e., a free non-profit health center, would stand and answers for the allegedly tortious conduct of the United States' deemed employees."[47]

"The 'other defenses' to which the United States is entitled include not only those defenses the United States may invoke independently, but also any defenses available to a similarly-placed private employer answering for the alleged torts of its employee."[48] But a similarly-placed private employer could not skirt the text of Rule 15(c)(1)(C) just because the vicarious liability counts in an amended complaint detail the conduct of new employees.[49] The United States stands in the shoes of a similarly-placed employer rather than its employees, and a similarly-placed employer would be subject to Rule 15(c)(1)(B)'s relation back rules.

---

[45] 28 U.S.C. § 1346(b)(1).

[46] *Lomando v. United States*, 667 F.3d 363, 374 (3d Cir. 2011).

[47] *Id.* at 374.

[48] *Id.*

[49] *See, e.g.*, *Miller v. Warren Hosp. IPA, PA*, Civ. Action No. 15-7496(FLW)(DEA), 2016 U.S. Dist. LEXIS 82955, at *12-13 (D.N.J. Jun. 27, 2016) (Where an amended complaint pled an additional count of vicarious liability against a defendant hospital based on new physicians' conduct, the court applied Rule 15(c)(1)(B) to hold that the claim related back to the prior complaint's vicarious liability count.).

The United States argues alternatively that the Court should deny relation-back because Mummert made no "mistake" in failing to include the internal medicine physicians in his original complaint, instead making a "strategic decision" to "consciously omit" them from the pleading.[50] But Rule 15(c) "plainly sets forth an exclusive list of requirements for relation back, and the amending party's diligence is not among them."[51] The United States wrenches these principles out of their context in Rule 15(c)(1)(C); the relevance of a party's "mistake" comes from Rule 15(c)(1)(C)'s second requirement that the party to be brought in by an amendment "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."[52] That requirement was a necessity for relation-back under a prior version of Rule 15,[53] but it is not a requirement under the now-existing Rule 15(c)(1)(B).

So Rule 15(c)(1)(B) applies, requiring only that Mummert's amendment "assert a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." It plainly does, and the United States does not contest this.

---

[50]   Brief in Support, Doc. 95 at 13–14.

[51]   *Krupski v. Costa Cociere S.p.A.*, 560 U.S. 539, 553 (2010).

[52]   *See Jordan v. Tapper*, 143 F.R.D. 575, 587–88 (D.N.J. Apr. 28, 1992).

[53]   *Id.* at 587 (explaining the standard under the "old rule"). The United States' cases all apply this pre-existing version of Rule 15(c).

The original complaint begins with Mummert's 12:30 p.m. presentation to the Baltimore VAMC, details the failure of the emergency medical team to order MRI scans despite Mummert's progressively worsening symptoms, and extends until Dr. Mushlin's 10:15 a.m. emergent MRI request, which was carried out ten hours later when Mummert was transferred to UMMC.[54] The amended complaint adds the failure of the internal medicine team to order MRI scans, beginning upon Mummert's admission to the Medical Floor at either 10:25 p.m. or 1:15 a.m. and extending to Dr. Stern's "routine" MRI request at 9:04 a.m., all of which occurred before Dr. Mushlin's examination at 10:15 a.m.[55] So Mummert's allegations involving the internal medicine physicians involves the same type of conduct, and occurred well within the span of time charted out in the original complaint. This entire course of conduct took place between Mummert's July 26, 12:30 p.m. presentation to the Baltimore VAMC and his July 27, 8:00 p.m. transfer to the UMMC to receive an MRI exam.[56]

The United States' final argument is that the doctrine of laches should bar Mummert's claim.[57] But laches cannot bar the application of the relation-back doctrine. "[T]he Rule mandates relation back once the Rule's requirements are

---

[54]   Complaint, Doc. 1 ¶¶9, 29, 31.
[55]   Amended Complaint, Doc. 89 ¶¶45–57. The amended complaint also details the internal medicine physicians' failure to arrange an MRI scan while Mummert was still being seen by the emergency team physicians, but Mummert was "pending admission." *Id.* ¶41.
[56]   *Id.* ¶¶ 9, 61.
[57]   Brief in Support, Doc. 95 at 18–19.

satisfied; it does not leave the decision whether to grant relation back to the district court's equitable discretion."[58] And "[l]aches, an equitable doctrine, generally cannot bar damages, a legal remedy."[59]

The United States' prejudice arguments are better framed as stemming from Rule 15(a) than from laches. In contrast to Rule 15(c), Rule 15(a), which governs leave to amend, "by its terms gives discretion to the district court.[60] So where a party seeks leave to amend, Rule 15(a) remains a backstop even where Rule 15(c)'s relation-back test is satisfied.[61] But Rule 15(a) provides that "[t]he court should freely give leave when justice so requires."[62] "Permissible justifications" for denial of leave to amend "include: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the opposition; (4) repeated failures to correct deficiencies with previous amendments; and (5) futility of the amendment."[63] "The burden is generally on the non-moving party to show why leave to amend should not be granted."[64]

Most of these factors favor granting leave to amend. As this is Mummert's first amended complaint, there is no history of repeated failures to correct

---

[58]  *Krupski*, 560 U.S. at 553; *SEPTA v. Orrstown Fin. Servs.*, 12 F.4th 337, 349 (3d Cir. 2021) ("[R]elation back stems from a federal rule, rather than equity.")

[59]  *Kars 4 Kids Inc. v. Am Can!*, 98 F.4th 436, 451 (3d Cir. 2024) (citing *Petrella v. Metro-Goldwyn-Mayer*, 572 U.S. 663, 678 (2014)).

[60]  *Krupski*, 560 U.S. at 553.

[61]  *See SEPTA*, 13 F.4th at 349 (explaining that "the structure of Rule 15 protects against th[e] specter" of abusing Rule 15(c) to permit "'limitless' filing of new claims").

[62]  Fed. R. Civ. P. 15(a)(2).

[63]  *Riley v. Taylor*, 62 F.3d 86, 90 (3d Cir. 1995); *Foman v. Davis*, 371 U.S. 178 (1962).

[64]  *Heraeus Med. GmbH v. Esschem, Inc.*, 321 F.R.D. 215, 217 (E.D. Pa. 2017) (quoting *Rizzo v. PPL Serv. Corp.*, No. 03-5779, 2005 U.S. Dist. LEXIS 11457, at *3 (E.D. Pa. Jun. 10, 2005)).

deficiencies with previous amendments, and an amendment would not obviously be futile. Nor is there any evidence of bad faith or dilatory motives. The United States appears to accuse Mummert of such, stating that "[b]ecause the emergency medical residents are all that are left in the original claim, Mr. Mummert is trying to unfairly reach back in time to add claims against the internal medicine physicians."[65] I reject this accusation. Mummert sought to include the conduct of these physicians—and the United States briefed in opposition, on the basis that they were excluded from the original complaint—*before* this Court issued its ruling.[66]

The final factors are prejudice and undue delay. "[P]rejudice to the non-moving party is the touchstone for the denial of the amendment."[67] The United States attempts to raise the same argument that, because it stands in the internal medicine physicians' shoes, it can make various arguments about the prejudice they would face by permitting the amendment.[68] But as the Court already explained, the United States stands in the shoes of a similarly situated employer, and this does not somehow confer the right to make procedural arguments which would only exist if these parties were actually added to the suit.

---

[65] Brief in Support, Doc. 95 at 18. *See also id.* at 14 ("Mr. Mummert and his experienced attorneys made the conscious decision to name only the emergency medicine physicians . . . . He now only names the internal medicine team because he realizes he should have sued UMMC but did not.").

[66] Brief in Support, Doc. 64 at 21; Brief in Opposition, Doc. 70 at 34–36; Reply Brief, Doc. 74 at 15–20.

[67] *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989).

[68] Brief in Support, Doc. 95 at 18–19.

Moreover, courts evaluating prejudice under Rule 15(a) ordinarily consider "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or theories."[69] So several of the United States' prejudice arguments, that the internal medicine physicians "will have to notify their insurance carriers and face potential employment sanctions,"[70] are not the kind of prejudice captured by Rule 15(a). And the United States' complaints that its internal medicine expert "will have to continue to trial" is "true for all litigation."[71] That burden would have been "the same" even if the internal medicine physicians had been included all along; "[t]hat is the difference between 'prejudice' and 'unfair prejudice.'"[72]

The United States' most important prejudice argument is that the amended complaint presents a "new theory" that "would require the Court to reopen discovery . . . and would require numerous depositions to be retaken."[73] Regarding undue delay, "[t]he mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay. In fact, delay alone is an insufficient ground to deny leave to amend."[74] "[A]t some point, the delay will become 'undue,'

---

[69]   *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001).
[70]   Brief in Support, Doc. 95 at 19.
[71]   *Brooks v. State Coll. Area Sch. Dist.*, No. 4:22-CV-01335, at *11–12 (M.D. Pa. Dec. 1, 2023).
[72]   *Id.*
[73]   Reply Brief, Doc. 105 at 11.
[74]   *Cureton*, 252 F.3d at 272–73 (citing *Adams v. Gould Inc.*, 739 F.2d 858, 863 (3d Cir. 1984), and *Cornell & Co., Inc. v. Occupational Safety and Health Rev. Comm'n*, 573 F.2d 820, 823 (3d Cir. 1973)).

placing an unwarranted burden on the opposing party.'"[75] That point has been found to arise, for example, where a party delays until after summary judgment has been granted to an adverse party, because amending at this point places a burden on judicial economy and a prejudice of prolonging litigation.[76] As established, prejudice can arise where "amendment would result in additional discovery, cost, and preparation to defend new facts or theories."[77]

While this Court rejects the United States' argument that Mummert somehow knew these physicians' identities at the time he filed the original complaint,[78] the United States insists that Mummert should have at least amended once he learned the internal medicine physicians' names.[79] The United States had apparently believed through the litigation that Mummert's "paralysis was unavoidable after he left the emergency room."[80] And this "switch" in theories, argues the United States, would require it to "reopen discovery" and hire a new expert.[81]

I do not accept the notion that Judge Rambo exposed the United States to undue prejudice by granting Mummert leave to amend his complaint. Mummert's

---

[75] *Adams*, 739 F.2d at 868.
[76] *See Cureton*, 252 F.3d at 273 (collecting cases).
[77] *Id.* at 273.
[78] *See* Brief in Support, Doc. 95 at 5 ("*After* reviewing the medical records and his expert opinions, Mr. Mummert then filed a federal complaint.") (emphasis added) (citing letters from Jagminas, Fridberg, and Thaler); Complaint, Doc. 1 (filed April 20, 2018); Thaler Letter, Doc. 96-7 (dated July 24, 2018); Fridberg Letter, Doc. 96-8 (dated July 27, 2018); Jagminas Letter, Doc. 96-9 (dated July 31, 2018).
[79] Brief in Support, Doc. 85 at 6, 8 n.7.
[80] Reply Brief, Doc. 105 at 11–12.
[81] *Id.* at 11–12.

original complaint unambiguously encompasses these physicians' delays in ordering an MRI between his presentation to the Baltimore VAMC and his transfer to the UMMC for an MRI, and it expressly requests relief against "other medical providers whose care and treatment of Mr. Mummert is known to Defendant and not to Plaintiff in the absence of discovery."[82] As the claims based on the internal medicine physicians' conduct arose out of the same "conduct, transaction, or occurrence" as the claims in the original complaint,[83] the United States should have been aware of the scope of Mummert's claims from the beginning. That places at least some blame on the United States, not Mummert, for failing to be aware that Mummert's FTCA suit could have encompassed these claims. Mummert made no "switch" in theories between his original and amended complaints.

Importantly, even if this Court itself would have denied leave to amend, it is a step too far to say that Judge Rambo's decision was so erroneous, and creates such manifest injustice, that this Court should grant reconsideration. That is especially true given the similarity and temporal proximity of the internal medicine physicians'

---

[82] Complaint, Doc. 1 ¶44.

[83] The relation-back test is calculated to detect whether the prior pleading has given fair notice of the subsequent claims, so the same kinds of facts showing that these claims relate back also show that the United States had notice of these claims for purposes of 15(a). *See Glover v. F.D.I.C.*, 698 F.3d 139, 145–46 (3d Cir. 2012) (explaining that the touchstone for relation back is whether the original complaint gave "fair notice of the general fact situation and the legal theory upon which the amending party proceeds"); *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (explaining the interrelation between Rule 15(c) and Rule 8(a)).

conduct with the conduct of the emergency physicians and Dr. Mushlin. Accordingly, I reject the United States' request to dismiss these claims.

### B.   Motion to Dismiss Claim Stemming From Dr. Izadpanah's Conduct

The United States moves to dismiss any claims based on Dr. Namjeh Izadpanah's conduct because it views Mummert's pleadings as insufficiently specific to plausibly allege a claim under Federal Rule of Civil Procedure 12(b)(6).[84]

Under Rule 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[85] and *Ashcroft v. Iqbal*,[86] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[87] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[]

---

[84]   The United States' motion only contests the sufficiency of Mummert's pleading under Rule 12(b)(6), so I do not analyze this claim under a summary judgment standard.

[85]   550 U.S. 544 (2007).

[86]   556 U.S. 662 (2009).

[87]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[88]

To state a claim for negligence in Maryland, the plaintiff must show "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty."[89] The United States limits its arguments to whether the amended complaint has alleged Dr. Izadpanah's breach with requisite specificity.

While sparse, Mummert's amended complaint plausibly states a claim for relief. The simple argument connecting each of the physicians to Mummert's negligence claims is that they did not order Mummert a STAT (i.e., "immediate")[90] MRI but should have been aware that one was necessary based on the circumstances. That general formula is the same in Dr. Izadpanah's case: the amended complaint explains that Dr. Izadpanah was part of the resident team who took over on July 27 at 9:00 a.m., and during her treatment "noted that Mummert's neurologic symptoms were progressively worsening," which put her on notice that a STAT MRI should have been ordered.[91]

---

[88] *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

[89] *Rosenblatt v. Exxon Co., U.S.A.*, 642 A.2d 180, 188 (Md. 1994).

[90] *Stat* is the abbreviation for *statim*. *Stat*, ATTORNEYS' DICTIONARY OF MEDICINE (2023). *Statim* means: "At once; immediately." *Statim*, ATTORNEYS' DICTIONARY OF MEDICINE (2023).

[91] Amended Complaint, Doc. 89 ¶¶53–54.

The United States argues that the amended complaint "does not state what she failed to do."[92] But that is obvious: she failed to order a STAT MRI, just like the other physicians.[93] Although there is not a specific allegation that Dr. Izadpanah did not order an MRI, Dr. Izadpanah is included in the list of all physicians in Mummert's catch-all paragraph, listing various methods of diagnosis and treatment that these physicians did not employ.[94] In any case, it is at least a reasonable inference[95] from the amended complaint that Dr. Izadpanah did not order a STAT MRI because Mummert was not transferred for his MRI examination until 8:00 p.m. that day.[96] I therefore reject the United States' argument that Mummert's amended complaint does not plausibly allege facts supporting Dr. Izadpanah's breach.

The United States' final argument is that Dr. Izadpanah did not have a duty to order an MRI when one had already been ordered.[97] But the duty Mummert alleges throughout his amended complaint is not the duty to order an MRI, but the duty to order a STAT MRI. According to the amended complaint, of the five times physicians recommended that Mummert get an MRI before Dr. Mushlin's "emergent

---

[92] Brief in Support, Doc. 95 at 20.

[93] *See id.* at 20 (explaining that Mummert alleges that these doctors "failed to order a STAT MRI," but that Mummert does not allege what Izadpanah failed to do).

[94] Amended Complaint, Doc. 89 ¶73.

[95] In evaluating a motion to dismiss under Rule 12(b)(6), "[t]he Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in favor of the non-moving party." *Chandler v. Univ. of Pa.*, 927 F.Supp. 2d 175, 176 (E.D. Pa. 2013) (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009)).

[96] *Id.* ¶61.

[97] Reply Brief, Doc. 105 at 12.

MRI" request, none of those requests were either "urgent" or for a STAT MRI.[98] So the fact that various physicians recommended that Mummert get an MRI before and after Dr. Izadpanah was involved in his care does not make it implausible that she breached her duty of care by failing to order a STAT MRI. Accordingly, Mummert's amended complaint plausibly states a negligence claim against the United States based on Dr. Izadpanah's conduct.

### C.    Motion to Dismiss under the Borrowed Servant Doctrine

In this Court's prior Memorandum Opinion, Judge Rambo rejected the United States' argument that two resident physicians, Drs. Lee and Zheng, were employees of the UMMC under Maryland's borrowed servant doctrine because "caselaw is clear that federal law controls an individual's employment status under the FTCA."[99] Judge Rambo also held that because Drs. Lee and Zheng's resident agreement "specified that all physicians 'activities within the scope of their Hospital duties' were 'covered by the Federal Tort Claims Act,'" "the parties agreed that the Baltimore VA bears the risk of resident physicians' negligence, and as such, the Maryland borrowed servant doctrine cannot apply."[100] A footnote in Judge Rambo's opinion also noted that these same arguments would apply to Drs. Gordon, Stern,

---

[98]   *Id.* ¶28 (the radiology team requested an MRI of Mummert's spine); ¶32 (Dr. Sajedi "recommended an MRI"); ¶39 (Dr. Zheng "requested" neurological checks every four hours, and an MRI of the brain, cervical spine, thoracic spine, and lumbar spine); ¶48 (Dr. Gordon noted a "plan to get MRI" for Mummert); ¶55 (Dr. Stern entered a radiology request for an MRI); ¶58 (Dr. Mushlin requesting an emergent MRI).

[99]   Memorandum Opinion, Doc. 88 at 15.

[100]  *Id.* at 15–16.

Long, and Izadpanah.[101] The United States raises its borrowed servant argument again against Drs. Gordon, Stern Long, and Izadpanah, but notes that it does so "to preserve the record."[102]

The law of the case doctrine generally "prevents reconsideration of legal issues already decided in earlier stages of a case."[103] "[T]he law of the case doctrine does not limit a federal court's power, rather it directs its exercise of discretion."[104] "As a prudential principle, law of the case holds that a rule of law announced in a case should be applied to 'the same issues in subsequent stages in the litigation.'"[105] "The doctrine is designed to 'promote finality, consistency, and judicial economy.'"[106]

Judge Rambo issued only non-binding dictum as to whether the borrowed servant doctrine applies to Drs. Gordon, Stern, Long, and Izadpanah. But because they are in the same position as Drs. Lee and Zhang, the rule of law Judge Rambo announced precludes applying the borrowed servant doctrine to these resident physicians as well. Rather than reexamining this issue, I exercise my discretion to apply the law of the case doctrine to Judge Rambo's rulings that the Maryland

---

[101] *Id.* at 12 n.12.
[102] Brief in Support, Doc. 95 at 23.
[103] *Bedrosian v. United States*, 42 F.4th 174, 181 (3d Cir. 2022).
[104] *Lambert v. Blackwell*, 387 F.3d 210, 236 n.20 (3d Cir. 2004).
[105] *Saint-Jean v. Palisades Interstate Park Comm'n*, 49 F.4th 830, 835 (3d Cir. 2022) (quoting *In re Resyn Corp.*, 945 F.2d 1279, 1281 (3d Cir. 1991)).
[106] *Bock v. Pressler & Pressler, LLP*, No. 11-7593(KM)(SCM), 2017 U.S. Dist. LEXIS 174241, at *11 (D.N.J. Oct. 19, 2017) (quoting *Hamilton v. Leavy*, 322 F.3d 776, 787 (3d Cir. 2003)).

borrowed servant doctrine does not apply in this case, either because federal law controls an individual's employment status under the FTCA, or because of the resident agreements' specifications that the Baltimore VA (and hence the United States) shall assume liability for the residents' conduct.

###    D.    Motion to Dismiss Claim Stemming from Dr. Rus's Conduct

The final issue is whether Dr. Violeta Rus is an independent contractor or an employee for purposes of the FTCA. As I will explain below, Judge Rambo's dictum on this issue applied the wrong burden of proof. Mummert must muster at least some evidence that Dr. Rus is not an independent contractor to survive dismissal for lack of jurisdiction. His failure to do so means that the claim must be dismissed.

In ruling on the United States' previous motion, Judge Rambo dismissed Dr. Rus from the suit without prejudice because the complaint did not allege sufficient facts to support an inference that she breached any standard of care; this ruling did not reach the merits of whether Dr. Rus was an independent contractor.[107] But in a lengthy footnote, Judge Rambo explained:

> The United States' request for summary judgment to the extent Mummert asserts negligence stemming from the actions of physicians [including] Rus . . . is moot . . . Nevertheless, even if the request for summary judgment was not moot, the government's motion fails to demonstrate that the independent contractor exception applies to Rus . . . as a matter of law. The allegations in this case appear to focus on Rus' service as an inpatient attending on the medicine floor of the Baltimore VA, but the United States' submissions shed no meaningful light on the circumstances of her employment, including whether she

---

[107] Memorandum Opinion, Doc. 88 at 11.

worked in the Baltimore VA pursuant to an independent contractor agreement, whether the government or UMMC paid her wages, and whether the government or UMMC had authority to control her schedule and day-to-day responsibilities . . . . In the absence of evidence as to control or any other factors relevant to the independent contractor exception, the court cannot conclude with any certainty that Rus carried out her responsibilities at the Baltimore VA as an independent contractor.[108]

The parties dispute the significance of that statement to the United States' current motion, in which it raised this legal issue again. Mummert contends that Judge Rambo "made a separate, specific ruling regarding Dr. Rus, holding that 'the government [failed] to demonstrate that the independent contractor exception applies to [Dr. Rus] as a matter of law."[109] The United States implicitly rejects this argument,[110] noting that the FTCA's employee requirement is jurisdictional.[111]

The law of the case doctrine does not apply to dicta.[112] Despite Mummert characterizing this language as a "ruling," "[s]imply labeling a statement in an opinion as a 'holding' does not necessarily make it so."[113] As Judge Rambo herself noted, the United States' independent contractor arguments were rendered "moot" by her earlier holding that Mummert's complaint did not plausibly allege any breach of duty. Hence it is dictum.

---

[108]   *Id.* at 12 n.2 (record citations omitted).
[109]   Brief in Opposition, Doc. 98 at 24.
[110]   Reply Brief, Doc. 105 at 15 (conceding only that "the Court's findings [as] to Sethuraman and Kapadia are law of the case.").
[111]   *Id.* at 13-14.
[112]   *Southco, Inc. v. Kanebridge Corp.*, 324 F.3d 190 (3d Cir. 2003); *United States Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*, 316 F.3d 392, 397 n.4 (3d Cir. 2003).
[113]   *United States v. Warren*, 338 F.3d 258, 265 (3d Cir. 2003).

In any case, while courts sometimes apply the law of the case doctrine to jurisdictional questions,[114] they often refuse to do so[115] because "a federal court cannot create jurisdiction where none exists."[116] "[T]he federal courts' unyielding obligation to uphold statutory and constitutional limitations on jurisdiction should not bend to less important prudential notions of comity and finality."[117] The law of the case doctrine also need not be followed under "'extraordinary circumstances,' such as if . . . the prior decision was 'clearly erroneous and would create manifest injustice.'"[118] These rationales combine here because, even if Judge Rambo's footnote could be considered a holding, it made the clearly erroneous error of not acknowledging that the FTCA's employee-status requirement is jurisdictional, and in so doing, applied the wrong burden of proof.

Critically, "[t]he requirement that a tortfeasor be 'an employee of the Government,' and not an independent contractor, appears in the jurisdictional provision of the FTCA. Hence it is jurisdictional."[119] True, for some exemptions to

---

[114] *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816-18 (1988); *United States v. Local 560 (I.B.T.)*, 974 F.2d 315, 330 n.8 (3d Cir. 1992).

[115] "[Q]uestions of subject matter jurisdiction are generally exempt from law of the case principles." *Dais v. United States*, Civ. No. 2:11-cv-03986 (WJM), 2013 U.S. Dist. LEXIS 167900, at *13 (D.N.J. Nov. 26, 2013).

[116] *Steele v. Meadows*, No. 07-cv-3542, 2008 U.S. Dist. LEXIS 16815, at *3 (E.D. Pa. Mar. 5, 2008) (quoting 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350).

[117] *Public Interest Rsch. Grp. v. Magnesium Elektron*, 123 F.3d 111, 119 (3d Cir. 1997).

[118] *Walker v. Coffey*, 956 F.3d 163, 170 (3d Cir. 2020) (quoting *In re City of Phila. Litig.*, 158 F.3d 711, 178 (3d Cir. 1998)).

[119] *Irizarry v. United States*, Civil Action No. 18-8309, 2019 U.S. Dist. LEXIS 169655, at *6 n.7 (ES)(JAD) (D.N.J. Sep. 30, 2019).

FTCA liability—such as the discretionary function exemption, which is "jurisdictional on its face"—the burden of proof lies with the Government.[120] But the Third Circuit has distinguished "the six conditions on the FTCA's waiver of sovereign immunity contained in § 1346(b)(1)."[121] For these conditions, as with most jurisdictional issues, the plaintiff bears the burden of proof.[122] And the Third Circuit derived the FTCA's "independent-contractor exemption" from the FTCA's definition of the term "employee," the same jurisdictional language located in Section 1346(b)(1).[123] Therefore, the minority of courts which have allocated this burden of proof to the Government[124] have been misled by the labeling of the independent contractor rule as an "exemption." These decisions are in error.

Arguing that a government actor is an independent contractor rather than an employee is consequently a "factual attack" to the jurisdictional prerequisite of the government actor's employee status.[125] And in assessing factual challenges to jurisdiction, "'the plaintiff will have the burden of proof that jurisdiction does in fact

---

[120] *S.R.P. v. United States*, 676 F.3d 329, 333 & n.2 (3d Cir. 2012) ("[T]he Government has the burden of proving the applicability of the discretionary function exemption.").

[121] *CNA v. United States*, 535 F.3d 132, 145 (3d Cir. 2008).

[122] *Id.*; *S.R.P.*, 676 F.3d at 333; *Norman v. United States*, 111 F.3d 356, 357 (3d Cir. 1997) (affirming judgment analyzing motion for relief under FTCA due to tortfeasor's independent contractor status under rule 12(b)(1)).

[123] *Norman*, 111 F.3d at 357.

[124] *See, e.g.*, *Robertson v. Carrier Corp.*, Civil Action No. 2:09-64068-ER, 2012 U.S. Dist. LEXIS 187151, at *33–34 n.1 (E.D. Pa. Nov. 8, 2012) (erroneously relying on authorities discussing the discretionary function exemption to reason that the Government carries the burden of proving that an actor is an "independent contractor" instead of an employee).

[125] *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (explaining the distinction between facial and factual attacks to jurisdiction).

exist,' and the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'"[126] Accordingly, by relying on the fact that the evidence was in equipoise to conclude that the United States' independent contractor argument failed, Judge Rambo allocated the wrong burden of proof. So I am compelled to assess the issue anew.

The Third Circuit has "recognized, where jurisdiction is intertwined with the merits of an FTCA claim, that a district court must take care not to reach the merits of a case when deciding a Rule 12(b)(1) motion."[127] In such circumstances, district courts must demand "less in the way of jurisdictional proof than would be appropriate at a trial stage."[128] This relaxed standard remains applicable at later stages of a case, such as at summary judgment, even though "Rule 56 would provide more procedural safeguards."[129] Mummert's burden then falls somewhere between that required to survive summary judgment, and the actual burden of persuasion he would have on Dr. Rus's employee status at trial.

The evidence is inconclusive at best. Regardless of how "relaxed" the Third Circuit's relaxed 12(b)(1) standard is, Mummert has mustered almost no evidence

---

[126] *Id.* (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

[127] *CNA*, 535 F.3d at 144.

[128] *Id.* at 144 (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)).

[129] *Id.* at 140 (explaining that Rule 12(b)(1) applies even though "Rule 12(b)(6) or Rule 56 would provide more procedural safeguards"); *S.R.P.*, 676 F.3d at 331.

showing that Dr. Rus was a Baltimore VAMC employee, as opposed to a Baltimore VAMC independent contractor.

Whether one is an independent contractor in the FTCA context turns on whether the United States "control[s] the physical conduct of the contractor in performance of the contract."[130] "The critical factor used to distinguish a federal agency employee from an independent contractor is whether the government has the power 'to control the detailed physical performance of the contractor.'"[131] "[I]t is not necessary for the Government to continually control all aspects of the individual's activities, so long as it has the authority to do so given the nature of the task."[132] The question is whether "day-to-day operations are supervised by the Federal Government."[133] "In making the determination, courts have considered the contract between the parties."[134]

The Court has no evidence of the Baltimore VAMC's day-to-day control over Dr. Rus. First, the most vital evidence consulted by courts in the Third Circuit—a contract—is absent, despite many years of discovery. Indeed, courts have ordered jurisdictional discovery in the absence of a contract, concluding that "without any objective documentation of agreements or contracts" they would be "unable to

---

[130] *Logue v. United States*, 412 U.S. 521, 527 (1973).
[131] *Norman*, 111 F.3d at 357 (quoting *United States v. Orleans*, 425 U.S. 807, 814 (1976)).
[132] *Moreno v. United States*, 387 F.App'x 159, 160-61 (3d Cir. 2010) (emphasis added) (quoting *Patterson & Wilder Constr. Co., Inc. v. United States*, 226 F.3d 1269, 1274 (11th Cir. 2000).
[133] *Id.*
[134] *Greenland v. United States*, 661 F.App'x 210, 214 (3d Cir. 2016) (citing *Norman*, 111 F.3d at 357-58).

render a decision regarding independent contractor status."[135] But here, fact discovery has concluded,[136] and Mummert does not request to reopen it.[137] If no contract has been produced through discovery because no contract exists at all, that is all the more reason to conclude that Dr. Rus is an independent contractor. Although employment relationships can be created without a contract, for purposes of the FTCA, the lack of such a contract greatly undermines the notion that the Government has the authority to control that individual's performance.

Lacking this critical piece of evidence does not necessarily sink Mummert's case. But he has nothing to compensate for it with. Dr. Rus has testified to a broad range of responsibilities as chief of the arthritis service at the Baltimore VAMC,[138] and a more limited range of inpatient duties.[139] But none of this information

---

[135] *Smiley v. Artisan Builders*, No. 13-7411, 2015 U.S. Dist. LEXIS 27662, at *8 (E.D. Pa. Mar. 4, 2015).

[136] Order, Doc. 41 (fact discovery due by 2/15/21).

[137] If he did, the request would be denied, for the Court cannot justify amending the scheduling order to reopen discovery where that amendment is necessitated by the moving party's total lack of diligence. Fed. R. Civ. P. 16(b)(4) ("schedule may be modified only for good cause and with the judge's consent"); *Ventec Int'l v. Nexus Med., LLC*, 541 F.Supp. 2d 612, 618 (D. Del. 2010) (Good cause "hinges on diligence of the movant and not on prejudice to the non-moving party."); *Karlo v. Pittsburgh Glass Works, LLC*, No. 2:10-cv-1283, 2015 U.S. Dist. LEXIS 194171, at *8 (W.D. Pa. Jun. 8, 2015) (citing *Wash v. Riggins Trucking Inc.*, 757 F.2d 557, 561 (3d Cir. 1985) *and Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404–05 (9th Cir. 2010)) (even despite diligence, Court may still exercise its inherent discretion over the case to deny the request to reopen discovery).

[138] These responsibilities include supervising all specialty outpatient clinics; supervising residence, fellows, and students in their clinics; making patient visits; reviewing consult requests; following up on medical issues; making patient visits; reviewing electronic consults; going to meetings; and coordinating all outpatient care. Rus Dep. Doc. 96-3 at 14:7–15:2.

[139] These include providing consultative rheumatology services for two months per year, during which she covers both the UMMC and the Baltimore VAMC simultaneously. *Id.* at 22:15–20.

communicates what day-to-day control the United States may have over Dr. Rus's performance. The fact that a contractor "must comply with federal standards and regulations" does not bear upon whether her day-to-day operations are supervised by the Federal Government,[140] and courts have found "[b]road governmental oversight" insufficient to show control under the FTCA.[141]

The only record evidence of control to which Mummert's briefings cite are general Baltimore VAMC policies which Dr. Rus presumably must follow.[142] But in *Nolden v. United States*, this Court held that "[r]equiring a contract healthcare professional to abide by the policies and procedures of the 'host' healthcare facility does not indicate that the facility supervises or exercises control over the contracted professional."[143] In response, Mummert has cited to the District of Maryland's decision in *Harris-Reese v. United States*, which would point the Court to "other indicia of control such as the degree of control over 'when a doctor performs his services, the number of hours he performs them, and the administrative details

---

[140] *Logue*, 412 U.S. at 528.

[141] *See Woods v. Sec'y of the HUD*, No. 17-1903, 2017 U.S. Dist. LEXIS 170854, at *5 (E.D. Pa. Oct. 16, 2017) (quoting *Smiley*, 2015 U.S. Dist. LEXIS 83800, at *4); *Nolden v. United States*, No. 1:12-cv-01541, 2014 U.S. Dist. LEXIS 52881, at *11 (M.D. Pa. Apr. 16, 2014) ("[I]f the contractor manages the job's daily functions, and the federal actor is likely an independent contractor even if the Government reserves the right to inspect the contractor's work and monitor its compliance with federal law.") (citing *United States v. Orleans*, 425 U.S. 807, 815 (1976)).

[142] Sur-Reply, Doc. 77 at 10 (citing Exhibit "B," Doc. 77-2).

[143] *Nolden*, 2014 U.S. Dist. LEXIS 52881, at *20–21; *Leone v. United States*, 910 F.2d 46, 50 (2d Cir. 1990).

incident' to those services."[144] But this Court has no occasion to consider whether *Harris-Reese*'s rationale—which relied on Title VII cases—is persuasive within the Third Circuit. The Baltimore VAMC policies to which Mummert cites shed little light on these "other indicia of control," as most of them constitute broad supervisory policies and do not show how Dr. Rus's work was controlled in particular. Granting *arguendo* that these policies may weigh slightly in Mummert's favor, they are not enough to compensate for the absence of any written agreement.

As to Dr. Rus's role as Director of Arthritis Services at the Baltimore VAMC, where an actor is "given broad responsibilities," this suggests independent contractor status unless it is clear that the Government somehow controlled the execution of these broad responsibilities.[145] In *Norman v. United States*, the Third Circuit explained that the Government did not exercise day-to-day control over a contractor, in part because it was "given broad responsibilities for daily maintenance" of the building rather than being instructed in how to carry out these responsibilities.[146]

Mummert states without citation that "Dr. Rus admitted that she was employed by the Baltimore VAMC."[147] Dr. Rus states at the beginning of her deposition that she is "employed at the University of Maryland *and* the VA,"[148] but

---

[144] 615 F.Supp.3d 336, 362 (D. Md. 2022) (quoting *Cilicek v. Inova Health Sys. Servs.*, 115 F.3d 256, 260 (4th Cir. 1997)).

[145] *See Norman*, 111 F.3d at 357.

[146] *Id.*

[147] Brief in Support, Doc. 70 at 42.

[148] Rus Dep., Doc. 96-3 at 14:3–5; United States' Statement of Facts, Doc. 96 ¶15; Mummert's Response to United States' Statement of Facts, Doc. 99 ¶15.

later states that she is employed by the "University."[149] Assuming that Mummert meant to cite these statements, Judge Rambo correctly referred to them as "conclusory"[150] because they do not bear upon the FTCA's independent contractor test. In any case, while the understanding of the parties could possibly be relevant to independent-contractor status, it is hardly the most important factor.[151] Ordinarily, and as is the case here, the fact that an actor is carrying out duties for multiple entities supports independent contractor status. Under such circumstances, it is more likely that the physician has greater control over when she performs her responsibilities for each employer, and that is the way this evidence points in the absence of countervailing facts.[152]

Our Court of Appeals drew special attention to the factor of day-to-day control and the evidence of a contract in its seminal published opinion on this issue, and Mummert has presented evidence of neither. Mummert points out that day-to-day control is not the only relevant factor in determining whether an actor is an

---

[149] *Id.* at 39:7–11.

[150] Memorandum Opinion, Doc. 88 at 12 n.2.

[151] *See Kellam v. Snelling Personnel Servs.*, 866 F.Supp. 812, 816 (D. Del. 1994) (explaining in the Title VII context that "[w]hile courts have recognized that the parties' intention to form an employer-employee relationship can be a factor, it is not dispositive") (citation omitted).

[152] Some commentators and courts have found that an actor may simultaneously act within the scope of her employment for two separate employers, one of whom is the Government. 1 Lester S. Jayson & Robert C. Longstreth, Handling Federal Tort Claims § 8.04 (2024) ("It is possible, of course, that one may be an employee of both the United States and another at the same time."); *Layne v. United States*, 295 F.2d 433 (7th Cir. 1961); *Jenkins v. Univ. of Minn.*, 50 F.Supp. 3d 1084, 1095–96 (D. Minn. 2014). Even assuming that this notion is valid within the Third Circuit, however, making such a finding would require a more developed record.

independent contractor.[153] But I need not reach the issue of what other factors the Court should consider, or when (if ever) they can outweigh the "critical" factor of day-to-day control. Mummert has presented no evidence bearing upon the factors looked to by his out-of-Circuit authorities, many of which would also be elucidated by a contract.

As it stands, the record reflects no employment contract or other evidence of day-to-day control, what generic evidence exists about Dr. Rus's role undermines the likelihood that she is a Baltimore VAMC employee, and the Baltimore VAMC's general hospital policies are insufficient to shift the evidence in Mummert's favor. I cannot find that this evidence satisfies even the Third Circuit's relaxed standard, and indeed, it likely does not even create an issue of fact for purposes of summary judgment. Moreover, because factual discovery is complete, the concerns associated with deciding a jurisdictional issue too early in the litigation are greatly diminished here. Accordingly, the United States' motion to dismiss Mummert's claims based upon Dr. Rus's conduct for lack of jurisdiction will be granted.

---

[153] Brief in Opposition, Doc. 70 at 37 (pointing the Court to the Tenth Circuit's articulation of seven factors bearing upon FTCA independent contractor status); *Lilly v. Fieldstone*, 876 F.2d 857, 858 (10th Cir. 1989) ("(1) the intent of the parties; (2) whether the United States controls only the end result or may also control the manner and method of reaching the result; (3) whether the person uses her own equipment or that of the United States; (4) who provides liability insurance; (5) who pays social security tax; (6) whether federal regulations prohibit federal employees from employing such contracts; and (7) whether the individual has authority to subcontract to others.").

## III.    CONCLUSION

The United States' arguments that claims relating to the internal medicine physicians do not relate back to the original complaint are both unfounded and would require reconsideration of Judge Rambo's determination that granting leave to amend was appropriate. No clear error is apparent that would compel me to reconsider Judge Rambo's determination, or even to reach a different outcome in the first instance. Moreover, Mummert has stated a plausible claim for relief against Dr. Izadpanah, and the application of Maryland's borrowed servant doctrine is barred by the law of the case doctrine. In these respects, the United States' motion will be denied. However, Mummert carries the burden to produce at least some evidence that Dr. Rus was an employee of the Baltimore VAMC rather than an independent contractor, and he has failed to discharge this burden. The United States' motion to dismiss claims relating to Dr. Rus for lack of jurisdiction will therefore be granted. Although the United States moved for summary judgment in the alternative, that motion is moot in light of the rulings described above.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge